**LAW OFFICES OF CARLIN & BUCHSBAUM, LLP**
GARY R. CARLIN, CSBN: 44945
*gary@carlinbuchsbaum.com*
BRENT S. BUCHSBAUM, CSBN: 194816
*brent@carlinbuchsbaum.com*
LAUREL N. HAAG, CSBN: 211279
*laurel@carlinbuchsbaum.com*
301 East Ocean Blvd., Suite 1550
Long Beach, California 90802
Telephone:(562)432-8933;Fax: (562)435-1656

Attorneys for Plaintiff, ANDRE CHARLES

**DRINKER BIDDLE & REATH,**
CHERYL D. ORR, CSBN: 143196
IRENE M. RIZZI, CSBN: 303484
Four Embarcadero Ctr. 27th Floor
San Francisco, California 94111
Telephone: (415)591-7500
Facsimile: (415)591-7510
**DRINKER BIDDLE & REATH, LLP**
PHILIPPE A. LEBEL, CSBN: 274032
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310)203-4000
Facsimile: (310)229-1285
Attorneys for Defendant,
AIRGAS USA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

| | |
|---|---|
| ANDRE CHARLES, individually, on behalf of all others similarly situated, and as representatives of other aggrieved employees,<br><br>    Plaintiff;<br><br>    vs.<br><br>AIRGAS USA, LLC, a Delaware limited liability company; and DOES 1 through 250, inclusive;<br><br>    Defendants. | Case No.: 2:18-cv-1937-JGB (SHKx)<br>*Related to Case No.:*<br>*5:17-cv-02160-JGB(SHKx)*<br>[Lead case]<br><br>*The Honorable Jesus G. Bernal*<br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    June 17, 2019<br>Time:    9:00 a.m.<br>Ctrm:    1<br><br>Action Filed:    1/25/2018<br>*[Charles v. Airgas USA, LLC]* |

| | |
|---|---|
| 1  FRANKLIN MEANS, on behalf of | **KAWAHITO LAW GROUP, APC** |
| 2  himself and others similarly situated, | JAMES K. KAWAHITO |
|  | 222 N. Sepulveda Blvd., Suite 2222 |
| 3            Plaintiff, | El Segundo, California 90245 |
|  | Telephone: (310)746-5300 |
| 4  vs. | Fax: (310)593-2520 |
| 5  |  |
| 6  AIRGAS USA, LLC, a Delaware | **CROSNER LEGAL PC** |
|    limited liability company; AIRGAS | Michael R. Crosner |
| 7  USA, LLC-WEST DIVISION, a |  Zachary Crosner |
|    limited liability corporation; and | 433 North Camden Drive, Suite 400 |
| 8  DOES 1 through 100, Inclusive; | Beverly Hills, California  90210 |
| 9  | Telephone:  (310)416-5818 |
|              Defendants. | Facsimile:  (310)510-6429 |
| 10 |  |
| 11 | Attorneys for FRANKLIN MEANS, |
| 12 | Individually and on behalf of all others |
| 13 | similarly situated. |
| 14 | Action Filed:   9/30/2017 |
| 15 | *[Means v. Airgas USA, LLC]* |

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION

# **TABLE OF CONTENTS**

I.    INTRODUCTION ………………………………………….…..... 3

II.   FACTS AND PROCEDURE ……..………….…….……….……… 4

    A.  Plaintiffs Filed a Putative Class Action Alleging Labor Code Violations ……………………………….…….................... 4

III.  LEGAL CLAIMS ………..……………………………....……… 5

    A.  Unpaid Overtime / Regular Rate Miscalculation ………………… 5

    B.  Meal and Rest Period Premiums ……………………………… 6

    C.  Minimum Wage ……………………………………………… 8

    D.  Paystub Claims ……………………………………………… 8

    E.  PAGA CLAIMS ……………………………………………… 9

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ………... 10

    A.  The Settlement is Fair, Adequate and Reasonable …………………… 10

        1.  The Strength of the Case …………………………………….… 10

        2.  Risk, Expense, and Complexity of Further Litigation ..………… 11

        3.  Risk of Maintaining Class Action Status …………………..…… 12

        4.  Settlement Amount Provides Realistic Value for Claims ……... 12

            A.    Waiting Time Penalties ………………………..…… 12

            B.    Meal and Rest Periods …………………………..…… 12

            C.    Overtime Underpayment …………………………..... 13

            D.    Paystub Violations …………………………..…… 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

E.    Unpaid Wages and Minimum Wages ……………….. 13

F.    PAGA Claims …………………………………… 14

5.  Discovery Completed and the Status of Proceedings ………….. 14

6.  The Experience and Views of Counsel ………………….…... 14

B.  The Preliminary Approval Standard Is Met ………………………….. 15

1.  The Settlement is Within the Range of Possible Approval ……. 15

2.  The Settlement Resulted from Arm's-Length Negotiations …… 15

3.  The Settlement is Devoid of Obvious Deficiencies …………… 16

V.    THE SETTLEMENT MERITS CERTIFICATION ………….…......... 18

A.  Rule 23(a)(1) Numerosity Is Satisfied ……………………………… 18

B.  Rule 23(a)(2) Commonality Is Satisfied ……………………………... 18

C.  Rule 23(a)(3) Typicality Is Satisfied …………………………….….... 18

D.  Rule 23(a)(4) Adequacy Is Satisfied …………………..……. 19

E.  Rule 23(b)(3) Predominance Is Satisfied ………………………….... 19

VI.    THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS …. 20

VII.    CONCLUSION ..…………………………………….…………21

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

NOTICE OF MOTION

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                    **Page**

*Amchem v. Windsor*

    521 U.S. 591 (1997) ………………………………………..…… 19, 20

*Chu v. Wells Fargo Investments, LLC*

    Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645

    (N.D. Cal. Feb. 16, 2011) …………………………………….…..… 17

*Churchill Vill., LLC v. Gen. Elec.*

    361 F.3d 566 (9th Cir. 2004) ………………………………..……… 20

*Dalton v. Lee Publ'ns*

    No. 08-cv-1072-BTM(NLS) 2011 WL 1045107

    (S.D. Cal. Mar. 22, 2011) …………………………………………… 9

*Eisen v. Carlisle & Jacqueline*

    417 U.S. 156 (1974) ……………………………………………….. 20

*Fleming v. Covidien, Inc.*

    No. ED-cv-10-01487-RGK(OPx), 2011 WL 7563047

    (C.D. Cal. Aug. 12, 2011) ………………………………………… 10

*Gribble v. Cool Transports Inc.*

    No. CV-06-04863-GAF(SHx), 2008 WL 5281665

    (C.D. Cal. Dec. 15, 2008) ………………………………..……… 14-15

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011 (9th Cir. 1998) ……………………………………….. 18-20

*Hurst v. Buczek Enter. LLC*

    870 F.Supp.2d 810 (N.D. Cal. 2012) …………………….………….. 9

*Ikonen v. Hartz Mountain Corp.*

    122 F.R.D. 258 (S.D. Cal. 1988) ………………………………… 18

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

*In re Bluetooth Headset Prods. Liab. Litig.*

    654 F.3d 935 (9th Cir. 2011) …………………………………….. 17

*In re First Capital Holdings Corp. Finan. Prods.*

    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) …………..... 15

*In re Pacific Enterprises Sec. Litig.*

    47 F.3d 373 (9th Cir. 1995) …………………………………..…… 14

*In re Portal Software, Inc. Sec. Litig.*

    No. C-03-5138-VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ….. 11

*Lazarin v. Pro Unlimited, Inc.*

    No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) …..... 17

*Leyva v. Medline Indus. Inc.*

    716 F.3d 510 (9th Cir. 2013) …………………………………..…… 19

*National Rural Tele. Coop. v. DIRECTTV, Inc.*

    221 F.R.D. 523 (C.D. Cal. 2004) ………………………………….. 11

*Rodriguez v. West Publishing Corp.*

    563 F.3d 948 (9th Cir. 2003) ……………………………………… 10

**California Cases**                                                   **Page**

*Kao v. Joy Holiday*

    – Cal.Rptr.3d –, 2017 WL 2590653 (Cal. Ct. of Appeal, June 15, 2017) .... 7

*Kirby v. Immoos Fire Protection, Inc.*

    53 Cal.4th 1244 (2012) ………………………………..…….. 8

*Ling v. P.F. Chang's China Bistro, Inc.*

    245 Cal.App.4th 1242 (2016) ……………………………..…….. 8

*Lopez v. Friant & Associates*

    15 Cal.5th 773 (2017) ………..……………………………...…….. 9

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

**California Cases (cont.)**                                              **Page**

*Price v. Starbucks Corp.*

    192 Cal.App.4th 1136 (2011) …………………………………... 9

*Thurman v. Bayshore Transit Management, Inc.*

    203 Cal.App.4th 1112 (2012) …………………………….…… 10


**Federal Statutes**                                                     **Page**

49 Code of Federal Regulations Part 397.5 …………………………..…. 6, 7

Federal Rules of Civil Procedure Rule 23 ……………………….... 10, 18, 19

Motor Carrier Act ……………………………………………………..… 6


**California Statutes**                                                  **Page**

California Code Regulations § 13520 ……………………………………… 7

California Labor Code §203 …………………………………..… 5, 8

California Labor Code §226 ………………………………………... 9

California Labor Code § 2699 ………………………………… 10

Industrial Welfare Commission Wage Order #9 ……………………… 6


**Other Authorities**                                                    **Page**

Manual for Complex Litigation (3d ed. 1995) ……………………………… 15

Newberg on Class Actions (4th ed. 2013) ……………………………… 15

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Andre Charles and Franklin Means (collectively "Plaintiffs") seek preliminary approval of a $1,300,000 class action settlement that provides significant monetary relief for approximately 1528 Class Members.  The key terms of the Joint Stipulation of Class and Representative Action Settlement[1] are as follows:

(1)    Settlement Class Members:  all individuals who were employed by Airgas in California in its West Division as non-exempt hourly employees at any time between September 20, 2013 and February 1, 2019, inclusive.

(2)    A Gross Fund Value of $1,300,000 that includes:

(a)    The Net Fund Value (i.e., the Gross Fund Value minus Attorneys' Fees and Costs, payroll (employee only) taxes, the Claims Administration Fee, the LWDA Payment, and the Class Representative Service Awards).

(b)    $325,000 in Attorneys' Fees and up to $20,000 in actual costs to Class Counsel.

(c)    $18,000 Claims Administration Fee to Claims Administrator, Simpluris.

(d)    $20,000 PAGA payment pursuant to Private Attorneys General Act (75% of which, or $15,000, goes to the LWDA, and the remaining 25%, or $5,000, going to the Net Fund).

(e)    $7,500 Service Award to each of the class representatives.

---

[1]    Hereinafter, "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(3)    Non-reversionary Settlement, meaning monies in the Net Fund Value will be distributed to Class Members who do not opt out.

The Settlement is fair, reasonable, and adequate—and meets all requirements for approval under Federal law.  Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Plaintiffs Filed a Putative Class Action Alleging Labor Code Violations

On September 20, 2017, Plaintiff Means filed a class action complaint in State Court that was later removed to this Court.   The Complaint alleges that Defendant failed to: (1) pay all wages, including minimum wages; (2) pay overtime, including overtime at the proper regular rate; (3) provide require rest breaks and associated premiums; (4) pay wages due at termination; and (5) provide accurate wage statements.  Plaintiff Means sought to recover back wages, premiums, and civil penalties for Class Members.[2]  (Buchsbaum Decl. ¶9).

On January 25, 2018, Plaintiff Charles filed a similar class action complaint in State Court, alleging substantially the same claims, including a claim for meal period violations and associated premiums.   The *Charles Action* was also removed to Federal Court, and was later consolidated with the *Means Action*.

This proposed settlement came to fruition only after substantial legal research and analysis, extensive investigation, the exchange and analysis of a significant amount of relevant data, and extensive arm's-length settlement negotiations at a private mediation with Deborah Saxe, Esq., an experienced and well-regarded wage and hour class action mediator. Buchsbaum Dec., at ¶10

---

[2]    The complaint also includes causes of action for unfair competition (B&P Code § 17200), and enforcement of PAGA (Cal. Lab. Code § 2698 et seq.).

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

As stated, if the Settlement is approved, Defendant will pay a Common Fund settlement of $1,300,000. After deductions for court-approved incentive payments to the named Plaintiffs, settlement administration costs, attorneys' fees and costs, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class members, based on their number of workweeks during the relevant time periods.

This settlement provides a substantial recovery on Defendant's alleged wage and hour violations and disputed derivative penalty claims. Based on the litigation risks involved, Plaintiffs submit that the proposed settlement is well within the range of reasonableness required for approval. Moreover, the Settlement agreement and notice distribution plan are the products of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel. Buchsbaum Decl., ¶12-13

## III.    LEGAL CLAIMS

### A.    Unpaid Overtime / Regular Rate Miscalculation

Plaintiffs posited several theories of Class liability against Defendant in support of their alleged claims.  One of the primary claims was that the Defendant miscalculated the regular rate for overtime purpose.  Specifically, the Defendant paid non-exempt employees an amount for being "on-call," even if the employee was not actually called on to perform work.  However, Plaintiffs contended that these on-call earnings were not factored into the regular rate calculation for overtime purposes. Buchsbaum Decl., at ¶14

This methodological error led, in Plaintiffs' counsel's view, to relatively modest underpayments of overtime, which potentially triggered substantial waiting time penalties under Labor Code §203.   The Defendant, however,

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

contended that most of the individuals who received on-call work were drivers, and that these drivers, although paid overtime, were actually exempt from both Federal and State overtime laws under the Motor Carrier Act and under Wage Order #9.  Plaintiffs contended that even if the exemption held up, there was a contractual expectation of overtime paid at the regular rate, which was set forth in personnel policies.  The dispute, however, created some uncertainty over the issue of waiting time penalties, which are subject to a good faith dispute defense.  Buchsbaum Decl., ¶15

### B.    Meal and Rest Period Premiums

The second primary claim was unique to the 440 class members in the driver subclass and had to do with whether the drivers were relieved of all duty for the purposes of rest and meal periods.  Plaintiffs contented that most of the drivers, at one time or another, were transporting hazardous gases or liquids in Defendant's vehicles.  Pursuant to 49 CFR 397.5, "a motor vehicle which contains hazardous materials. . . and which is located on a public street or highway, or the shoulder of a public highway, must be attended by its driver."   Plaintiffs asserted that this legal requirement posed a significant practical barrier to drivers' ability to spend their meals and rest periods as they desired, thereby relieving them off all duty as required by law.  Essentially, meal and rest periods away from the vehicle had to be taken on private property, which limited their freedom given the constraints of being able to park the large vehicles.  Plaintiffs alleged a driver couldn't simply park on a public street and use rest and meal periods how he or she saw fit, but was bound by federal regulations to find some private property to park a large vehicle carrying hazardous materials, which was not only logistically challenging but was met with resistance by private property owners.   Buchsbaum Decl., ¶16

The Defendant, on the other hand, contended that a recent ruling by the

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

Pipeline and Hazardous Materials Safety Administration found that California meal and rest period rules were preempted by federal law, based on an administrative finding that the requirements "create an unnecessary delay in the transportation of hazardous materials, and are therefore preempted with respect to drivers of motor vehicles that are. . . subject to the attendance requirements of 49 CFR 397.5."  Buchsbaum Decl., ¶17

On December 21, 2018, during the pendency of this case, the Federal Motor Carrier Safety Administration ("FMCSA") issued an even broader ruling, finding that federal law preempts California meal and rest period requirements for all truckers operating in interstate commerce.  Plaintiffs averred that a significant dispute existed as to whether either of these administrative rulings were retroactive, and also whether they were going to survive a pending challenge at the 9th Circuit.  This is particularly true given that they contradicted previous rulings by the same agency.  However, because of the uncertainty in the law, a significant discount had to be attached to the exposure analysis. Buchsbaum Decl., ¶18.

For the same reasons, the ability to collect waiting time penalties based on the underpayment of meal and rest period premiums was fraught with uncertainty. With respect to Plaintiffs' waiting time penalties claim, Defendants argue that their good-faith belief in the legality of their employment practices precludes a finding that any withholding of wages was "willful." *See* Cal. Code Regs. § 13520 (good-faith dispute exists to a claim for waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); *see also **Kao v. Joy Holiday**,* ⸺ Cal.Rptr.3d ⸺, 2017 WL 2590653 at *8 (Cal. Ct. of Appeal, June 15, 2017) (precluding waiting time penalties where good-faith dispute existed over entitlement to wages, and holding that "[w]aiting time

penalties are properly limited to the *uncontested* wages due at the time of Kao's termination") (emphasis added). Defendant further contend that Plaintiffs' meal and rest period claims cannot support a claim for waiting time penalties under Labor Code § 203 after the California Supreme Court's decision in ***Kirby v. Immoos Fire Protection, Inc.***, 53 Cal.4th 1244 (2012), which held that meal and rest period claims are not actions for the "nonpayment of wages." Indeed, the California Court of Appeal held last year that "[f]ollowing *Kirby*, section 226.7 cannot support a section 203 penalty because [§ 203(b)] tethers the waiting time penalty to a separate action for wages." ***Ling v. P.F. Chang's China Bistro, Inc.***, 245 Cal.App.4th 1242, 1261 (2016). Buchsbaum Decl., ¶19

On top of these significant defenses on the merits, there was a question of whether the class was manageable given that the Defendant produced many sworn Declarations indicating that drivers and other workers were able to take rest and meal periods without difficulty, despite any regulations related to attending to hazardous waste, or any other factor.  Buchsbaum Decl., ¶20

### C.    Minimum Wage

Plaintiffs contended that to the extent that meal periods were not duty-free, and carried "attendance" duties with respect to custody of the vehicle's hazardous gases and liquids, the drivers were arguably not paid minimum wage, since they clocked out for meals, even when they were on-duty.  Again, however, this claim, which was derivative of the underlying meal period claim, was largely dependent on defeating federal pre-emption.   Buchsbaum Decl., ¶21

### D.    Paystub Claims

The Defendant had some difficulty locating the actual paystubs that were provided to the class members, but presumably at some point may have been able to have obtained them from the payroll provider, ADP.  The paystubs that were produced had some potential problems, including lacking the employee

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

1  identification number, and also listing either the double time or overtime rate

2  incorrectly, despite mathematically accurate payments.  Buchsbaum Decl., ¶22

3  Plaintiffs believe these irregularities potentially led to exposure under

4  PAGA, where technical non-compliance of Labor Code §226(a) requirements can

5  lead to civil penalties.  See *Lopez v. Friant & Associates* (2017) 15 Cal.5[th] 773.

6  However, statutory penalties under Labor Code §226 were more problematic from

7  a liability standpoint, since there is a requirement of injury.  Defendants likewise

8  argue that their alleged wage statement violations could not be shown to be

9  "knowing and intentional" as required by Labor Code § 226(e) for imposition of

10  penalties. *See, e.g., Hurst v. Buczek Enter., LLC*, 870 F.Supp.2d 810, 829 (N.D.

11  Cal. 2012) ("when a party makes a good faith claim that a worker [has been

12  properly classified], its failure to provide accurate wage statements is not knowing

13  and intentional."); *Dalton v. Lee Publ'ns*, No. 08-cv-1072-BTM(NLS), 2011 WL

14  1045107 at *5 (S.D. Cal. Mar. 22, 2011) (holding that good faith dispute precludes

15  finding that defendant acted "with the requisite scienter" under Labor Code §

16  226).  Buchsbuam Decl., ¶23

17  **E.    PAGA CLAIMS**

18  The PAGA claims were derivative of the claims described above, which in

19  our view made it likely that the court would likely substantially reduce the amount

20  of any civil penalty that was already the subject of a statutory violation.  There

21  was also the question of whether a court would permit "stacking" of civil penalties

22  that derive from the same underlying wrong, making calculation of a true PAGA

23  exposure very difficult.  Buchsbaum Decl., ¶24

24  Defendant also denies liability under PAGA because is contends Plaintiffs'

25  underlying claims are meritless. *See, e.g., Price v. Starbucks Corp*., 192

26  Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the

27  derivative UCL and PAGA claims also fail."). Defendant further contends that

28

even if liability were established, this Court would utilize its discretion to severely reduce any PAGA penalties awarded. *See* Labor Code § 2699(e)(2) (granting courts discretion to award "a lesser amount" than the full penalty "based on the facts and circumstances of the particular case"); *see also **Thurman v. Bayshore Transit Management, Inc***., 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); ***Fleming v. Covidien, Inc***., No. ED-cv-10-01487-RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000).

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    The Settlement is Fair, Adequate and Reasonable

To receive judicial approval, a proposed **class action** settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2). In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement (which is to be evaluated at the final approval hearing, after the class members have received notice). *See **Rodriguez v. West Publishing Corp***., 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiffs address each relevant factor below.

### 1.    The Strength of the Case

Although they steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that Defendants possessed several defenses to both liability and class certification, such that prevailing on either was uncertain.  As explained earlier in this brief, Defendant presented multiple defenses to each of Plaintiffs'

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

underlying claims, both on the merits and with respect to class certification. As a result, Plaintiffs' ability to certify and prevail on their claims was far from guaranteed. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." ***National Rural Tele*. *Coop. v. DIRECTTV, Inc*.**, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports preliminary approval.

### 2.    Risk, Expense, and Complexity of Further Litigation

The parties engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, including taking the deposition of the Defendant's Personal Most Knowledgeable with regard to the wage and hour practices at issue.  Both class representatives had their depositions taken, and Plaintiffs obtained sample class data and statistical information, as well as reviewed a substantial number of payroll records, multiple versions of employee handbooks and reviewed more than 30 witness Declarations on the key issues. The parties also engaged in formal written discovery with regard to exchanging key documents. *See* Buchsbaum Decl.,¶27.  Defendant filed a Motion for Summary Judgment based on federal preemption, and that Motion was pending at the time of the settlement, so there were significant risks to be taken into account.  As a result, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and the accompanying expense. *See, e.g.,* ***In re Portal Software, Inc. Sec. Litig*.**, No. C-03-5138-VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

//

//

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

NOTICE OF MOTION

### 3.    Risk of Maintaining Class Action Status

At the time the parties reached the Settlement, the Court had not yet addressed the propriety of class certification. Buchsbaum Decl., ¶28. Absent the Settlement, there was a risk that the Court could deny class certification as to some or all of the claims at issue thereby significantly reducing, or eliminating, potential recovery for Class Members.  Indeed, an adverse ruling at class certification could effectively mean that the putative Class Members would not recover anything. *Id*. As discussed herein, Plaintiffs believe there was substantial risk with certifying all of the proposed classes. Thus, this factor also supports preliminary approval.

### 4.    Settlement Amount Provides Realistic Value for Claims

This proposed settlement provides a substantial monetary recovery for Settlement Class members in face of disputed claims. As detailed below, Plaintiffs believe this settlement represents a good recovery in light of the substantial risks that the key claims were barred by federal preemption.

#### A. Waiting Time Penalties

There were 156 former drivers that we believe were underpaid in at least one pay period as a result of the regular rate misclassification, which given a 24.63 average hourly wage, amounts to a waiting time penalty of $922,147. However, as indicated, this was likely an "all or nothing" penalty, since it was subject to a good faith defense. Buchsbaum Decl., ¶30

#### B. Meal and Rest Periods

Based on the number of workweeks we extrapolated from the records, and given a 100% violation rate, there rest and meal period premium liability amounted to approximately $17 million.  However, there are federal agency rulings that indicate California's meal and rest period premiums are pre-empted by federal law, so there was a very significant discount factor that had to apply.

Moreover, the Defendant produced dozens of statements from class members indicating that they did have the opportunity to take uninterrupted meal and rest periods, so we viewed the likely exposure of being much lower, and these varying accounts of whether meal and rest periods were possible created significant certification risks as well. Buchsbaum Decl., ¶31

### C. Overtime Underpayment

The amount of the overtime underpayment based on the regular rate miscalculation was very modest, amounting to a few dollars for each pay period. Based on the size of the class, and our approximation of the number of shifts that on-call pay and overtime coincided, we believe the exposure was no more than $100,000. Buchsbaum Decl., ¶33

### D. Paystub Violations

Our best case on the paystub claim was that the Defendant did not maintain itemized wage statements, since the actual stubs could not be located. We believe there were 16,900 paychecks issues within the statutory period, which arguably led to class liability in the amount of $1,690,000. However, the Defendant contended that even if it did not maintain the actual paystubs, it maintained records that contained the information required in the paystubs, and thus there was no injury and no associated exposure. Buchsbaum Decl., ¶33

### E. Unpaid Wages and Minimum Wages

Plaintiffs contend that the Defendant required Class Members to clock out every day for a 30 minute meal period, even though they remained on duty. Assuming an average of 260 full time Drivers during the course of the class period, each Driver would be owed $12.31 per day for each day where he/she clocked out for a meal period.

Assuming an average of 250 work days per year, the total amount of wages owed would be roughly $4.4 million from September 2013 through the present.

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

1    Buchsbaum Decl., ¶34-35

2            F.   <u>PAGA Claims</u>

3       We believe there were approximately 32,136 pay periods within the PAGA

4 period, and at $100 per pay period based on these derivative claims, the exposure

5 might have amounted to $3,213,600. We viewed the PAGA claims as largely

6 duplicative of the other claims, and, as discussed above, highly vulnerable to a

7 reduction. Buchsbaum Decl., ¶36

8        **5.     Discovery Completed and the Status of Proceedings**

9       The parties engaged in a significant amount of investigation, informal class-

10 wide discovery, and analysis prior to reaching the proposed settlement. *See*

11 Buchsbaum Decl., ¶37. As stated, Defendant sample provided time and pay

12 records, and provided detailed data regarding total Settlement Class members, pay

13 period information, average hourly rates, and other relevant data for the class. It

14 was only after this exchange of data and information that the parties participated

15 in a full-day mediation and ultimately reached the proposed settlement by way of

16 a mediated settlement. Thus, this factor supports preliminary approval.

17        **6.    The Experience and Views of Counsel**

18       "Parties represented by competent counsel are better positioned than courts

19 to produce a settlement that fairly reflects each party's expected outcome in

20 litigation." ***In re Pacific Enterprises Sec. Litig***., 47 F.3d 373, 378 (9th Cir. 1995).

21 Here, Plaintiffs are represented by experienced wage and hour class action counsel

22 who collectively have more than two decades of wage and hour class action

23 experience, and who have successfully served as lead counsel in certifying and

24 settling numerous class actions both in the federal and state courts of

25 California. *See* Buchsbaum Decl., ¶¶ 2-8; Kawahito Decl., ¶¶ 2-4; Crosner Decl.,

26 ¶¶ 2-4; This factor supports preliminary approval. *See, e.g.,* ***Gribble v. Cool***

27 ***Transports Inc***., No. CV-06-04863-GAF(SHx), 2008 WL 5281665 at *9 (C.D.

28

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

Cal. Dec. 15, 2008)("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### B.    The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, and non-collusive negotiations; and (3) has no obvious deficiencies. *See **Manual for Complex Litigation*** (3d ed. 1995) at § 30.41; Newberg et al., *Newberg on **Class Actions*** (4th ed. 2013) at § 11:24-25. These criteria are met here.

#### 1.    The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification. Plaintiffs submit that the proposed settlement is within the range of possible approval, such that notice should be provided to the Settlement Class so that they can consider the settlement. The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Classes have had the opportunity to opt-out or object.

#### 2.    The Settlement Resulted from Arm's-Length Negotiations

This proposed settlement is the result of extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See **In re First Capital Holdings Corp. Finan. Prods***., MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

As discussed above, Plaintiffs thoroughly vetted the claims at issue and conducted factual investigation and extensive legal research and analysis. *See* Buchsbaum Decl., ¶38 . The parties reached this settlement only after mediating

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

with Deborah Saxe, Esq., a well-respected mediator with extensive experience in mediating wage and hour class actions. *Id.* The parties each supplied Ms. Saxe with detailed mediation briefs outlining their views of the strengths and weaknesses of each claim and defense. *Id*. As noted, the parties mutually accepted Ms Saxe's mediated proposal, which reflected what the mediator determined to be the fair settlement value of the case. *Id*. Even after the parties had come to an initial agreement, both sides continued to negotiate the finer points of the proposed settlement for several months while drafting the long-form settlement agreement. *Id*.

### 3.   The Settlement is Devoid of Obvious Deficiencies

If the Court preliminarily approves this settlement, Defendant will pay a Common Fund of $1,300,000, which shall be distributed to the Settlement Class on a non-reversionary basis. Moreover, no Settlement Class member will be required to submit a claim form to receive his or her Settlement payment. The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Common Fund: | $1,300,000 |
| Minus Court-approved attorney's fees (25%): | $325,000 |
| Minus Court-approved costs (up to): | $20,000 |
| Minus Court-approved incentive payments: | $15,000 |
| Minus PAGA payment to LWDA: | $15,000 |
| Minus settlement administration costs: | $18,000 |
| **Net Common Fund:** | **$907,000** |

An amount of approximately 604,970 from the Common Fund will be allocated to all class members, and an additional amount of approximately $302,030 will be distributed to the Drivers, who had some issues related to attending to hazardous materials that did not impact the entire settlement class and merited some additional weighting of the settlement distribution.

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

The payments will be made to class members based on their proportionate number of workweeks during the class period. *See* Settlement, ¶44.

The average payment to Settlement Class members is estimated at $594. Buchsbaum Decl., ¶41. Moreover, this average recovery per class member is on par with, and exceeds, other wage and hour class action settlements involving non-exempt employees alleging similar claims.

Settlement Class members who do not opt-out of the Settlement will be bound by the Settlement's terms, and will release the Releasees from all California claims that are alleged in, or that reasonably could have arisen based on the facts alleged in either the Charles or Means Complaint. *See* Settlement, ¶23. Settlement Class members who cash their settlement checks will also release their claims against the Releasees under the FLSA. *Id.*,

The parties have agreed to designate a total $20,000 of the Common Fund for PAGA penalties, seventy-five percent (75%) of which will go to the LWDA, which is appropriate. *See, e.g.,* ***Chu v. Wells Fargo Investments, LLC***, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 to LWDA out of $6.9 million common-fund settlement); ***Lazarin v. Pro Unlimited, Inc***., No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million common-fund settlement).

The proposed incentive payments to Plaintiffs of $7,500 each are also reasonable. Plaintiffs' Counsel will also file a separate motion for approval of attorneys' fees not to exceed 25% of the Common Fund for all past and future attorneys' fees necessary to prosecute, settle, and administer the litigation and this proposed Settlement, and for verified litigation costs not to exceed $20,000. *See* ***In re Bluetooth Headset Prods. Liab. Litig***., 654 F.3d 935, 942 (9th Cir. 2011) (in the Ninth Circuit, a 25% award is the "benchmark" attorneys' fee

award). Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

## V.    THE SETTLEMENT MERITS CERTIFICATION

### A.  Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are approximately 1528 current and former non-exempt employees in the proposed Settlement Class. See Settlement at ¶ 16; *see also **Ikonen v. Hartz Mountain Corp***., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

### B.  Rule 23(a)(2) Commonality Is Satisfied

The Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiffs' and the proposed Settlement Class' employment with Defendant, such as Defendant's allegedly improper regular rate miscalculations, meal and rest period policies and defects with maintaining accurate paystubs -- all of which Plaintiffs contend arise from a common core of facts, as discussed above. Buchsbaum Decl., 43

### C.  Rule 23(a)(3) Typicality Is Satisfied

According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See **Hanlon v. Chrysler Corp***., 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims are typical of those held by other non-exempt employees. Plaintiffs were employed by Defendant as hourly non-exempt employees during the relevant time periods.  Plaintiffs were subject to Defendants' challenged regular rate miscalculations, meal and rest period policies, as well as paystub irregularities. *Id*. Because the Settlement Class consists only of other non-exempt employees, and because Plaintiffs' claims stem from Defendant's wage and hour policies and practices, typicality is satisfied.

//

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

### D.  Rule 23(a)(4) Adequacy Is Satisfied

Plaintiffs are also adequate as a class representatives under Rule 23(a)(4). To satisfy this requirement, Plaintiffs and their counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the classes. ***Hanlon,*** *supra*, 150 F.3d at 1020. Here, there is no conflict of interest between Plaintiffs and the proposed Settlement Class. As non-exempt employees, Plaintiffs pressed forward claims for unpaid wages, unpaid premium wage, and related penalties resulting from Defendant's allegedly unlawful wage and hour policies and practices on behalf of other non-exempt employees. As detailed above, the proposed settlement reflects a substantial recovery of Settlement Class members' alleged damages. Given the relatively small amounts at issue per employee, Plaintiffs assert that it is unlikely that any class member, especially a current employee, would have pursued these claims against Defendant individually. *See, e.g.,* ***Leyva v. Medline Indus. Inc***., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."). Finally, Plaintiffs' counsel diligently litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the Settlement Class members. As set forth in the concurrently filed declarations of Plaintiffs' counsel, Plaintiffs' counsel are adequate to represent the proposed Settlement Class given their qualifications, skills, and experience. Buchsbaum Decl., ¶45

### E.  Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See* ***Amchem v. Windsor***, 521 U.S. 591, 623 (1997). Because Plaintiffs seek certification for

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

settlement purposes, trial manageability need not be considered. *Id*. at 620. As all Settlement Class members were allegedly deprived of wages due to Defendant's allegedly unlawful regular rate miscalculation, and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon, supra*, 150 F.3d at 1022.

## VI. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiffs propose that the settlement be administered by Simpluris, an experienced class action settlement administrator, who will mail the proposed Notice Packets to the Settlement Class. The proposed Notice Packet advises Settlement Class members of the key terms of the settlement and the uniform 45-day deadline to opt-out, submit a dispute, or file an objection to the settlement; it provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Plaintiffs' counsel, and notifies Settlement Class members of the date for the final approval hearing. *See* Proposed Class Notice.

//

//

//

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of this class, collective, and representative action settlement.

Respectfully Submitted,

Dated: May 16, 2019          LAW OFFICES OF CARLIN & BUCHSBAUM
                             A Limited Liability Partnership


By: __/s/ Brent S. Buchsbaum
Brent Buchsbaum, Attorney for Plaintiffs

CARLIN & BUCHSBAUM LLP
301 EAST OCEAN BOULEVARD, SUITE 1550
LONG BEACH, CALIFORNIA 90802