UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 17-2160 JGB (SHKx) | Date | July 1, 2019 |
|---|---|---|---|
| Title | *Franklin Means v. Airgas USA, LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| J. Kirk Donnelly<br>Roger Haag | Cheryl D. Orr (by phone) |

**Proceedings:** Order GRANTING Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 41)

Before the Court is Plaintiffs Franklin Means and Andre Charles's motion for preliminary approval of class action settlement. ("Motion," Dkt. No. 41.) The Motion is unopposed. The Court held a hearing on this matter on July 1, 2019. Upon consideration of the papers filed in support of the Motion, as well as oral argument presented by the parties, the Court GRANTS the Motion.

## I. BACKGROUND

On September 20, 2017, Means filed a class action complaint in the Superior Court of the State of California for the County of San Bernardino on behalf of himself and other similarly situated. ("Complaint," Dkt. No. 1-1.) Defendant Airgas USA, LLC ("Airgas") filed a notice of removal to this Court on October 20, 2017. (Dkt. No. 1.) The Complaint alleges that Defendant failed to (1) pay all wages, including minimum wages; (2) pay overtime, including overtime at the proper regular rate; (3) provide required rest breaks and associated premiums; (4) pay wages due at termination; and (5) provide accurate wage statements. Means sought to recover back wages, premiums, and civil penalties. On January 25, 2018, Plaintiff Charles filed a similar class action complaint in the Superior Court of the State of California for the County of Los Angeles, which was removed to this Court on March 8, 2018. Charles v. Airgas USA, LLC, et al., No. 2:18-CV-1937-JGB-(SHKx). The matters were consolidated under this docket on June 19, 2018. (Dkt. No. 28.)

Plaintiffs submitted the settlement agreement between the parties on May 14, 2019. ("Settlement Agreement," Dkt. No. 40.) Plaintiffs filed this Motion on May 15, 2019. (Dkt. No. 41.) They attached the following documents to the Motion:

- Declaration of Brent S. Buchsbaum (Dkt. No. 26-1);
- Declaration of James Kawahito (Dkt. No. 26-2);
- Declaration of Zachary M. Crosner (Dkt. No. 26-3).

Defendant did not oppose the Motion.

## II.     LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

### III.  CONDITIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS

The parties seek certification of the proposed settlement class for purposes of the Settlement Agreement. (Mot. at 18.)  The proposed settlement class is defined as "all individuals who were employed by Airgas in California in its West Division as non-exempt hourly employees at any time between September 20, 2013 and February 1, 2019, inclusive." ("Settlement Class," Settlement Agreement at 4.)  The Settlement Agreement also includes a subclass defined as "any Class Members who worked as drivers during the Class Period." ("Driver Subclass," Id.)  The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

**A.  Requirements of Rule 23(a)**

   **1.  Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To be impracticable, joinder must be difficult or inconvenient, but need not be impossible.  Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012).  There is no numerical cutoff for sufficient numerosity.  Id.  However, 40 or more members will generally satisfy the numerosity requirement.  Id.  A plaintiff has the burden to establish that this requirement is satisfied.  United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Here, there Settlement Class includes approximately 1,528 individuals. (Settlement Agreement ¶ 89.)  The Driver Subclass contains approximately 440 individuals.  (Id.)  Accordingly, the numerosity requirement is satisfied.

   **2.  Commonality**

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  Here, there are questions of law and fact common to the Settlement Class, which includes Defendant's allegedly improper regular rate miscalculations, meal and rest period policies, and failure to maintain accurate pay stubs.  There are separate questions of law and fact which are common to the Driver Subclass, which includes allegations that drivers transporting hazardous gases or liquids were not relieved of all duty for the purposes of rest and meal periods.  If the Court were to find that these practices or policies were unlawful, then all class members would have had a significant common question answered, such that the only remaining question would then be the individual determination of damages.  The Court is satisfied that Plaintiffs have met the commonality requirement.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiffs argue that their claims are typical of the class because they arise from the same practices and are based on the same legal theories as all other Class Members. While it is not clear whether Means worked as a driver or in another capacity, which would raise questions as to whether his claims are typical of those of the Driver Subclass, the Complaint in Charles clarifies that Charles worked as a driver for Airgas. The Court therefore finds that Plaintiffs have met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011). Plaintiffs maintain that there is no conflict of interest between them and the proposed Settlement Class because, as non-exempt employees, Plaintiffs pressed forward claims for unpaid wages, unpaid premium wage, and related penalties arising from Defendant's allegedly unlawful wage and hour policies on behalf of other non-exempt employees. (Mot. at 19.) It does not appear that there is any conflict of interest with the proposed Settlement Class that might prevent Plaintiffs from representing the interests of class members who suffered the alleged violations. Finally, Plaintiffs' counsel are experienced in class action and wage and hour litigation and have diligently litigated this case. (Buchsbaum Decl. ¶ 7, 45.) Thus, the adequacy requirement is met here.

## B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be

certified if the issues of the case require separate adjudication of each individual class member's claims.  Id.

Here, adjudication by representation is warranted because questions common to the settlement class represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication.  Since all Settlement Class members were allegedly deprived of wages due to Defendant's allegedly unlawful regular rate miscalculation, meal and rest period policies and practice, the Court is satisfied that a common nucleus of facts and potential legal remedies predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy.  Fed. R. Civ. P. 23(b)(3).  To determine superiority, a court's inquiry is guided by the following pertinent factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  Amchem, 521 U.S. at 620.

While the Motion does not directly address these factors, the Court is convinced that they are satisfied.  As Plaintiffs argue elsewhere in their motion, given the relatively small potential recovery for each individual member of the Settlement Class, it appears somewhat unlikely that any class member would have pursued these claims against Defendant individually.  The Court concludes that the superiority requirement is satisfied.

## IV.  SETTLEMENT AGREEMENT

### A. Settlement Class

The proposed settlement class is defined as "all individuals who were employed by Airgas in California in its West Division as non-exempt hourly employees at any time between September 20, 2013 and February 1, 2019, inclusive." (Settlement Agreement at 4.)  The Settlement Agreement also includes a subclass defined as "any Class Members who worked as drivers during the Class Period."  (Id.)

B. **Financial Terms**

Below is an overview of the financial terms of the Agreement:

- Gross settlement amount:         $1,300,000
- Attorney's fees (25%):           $325,000
- Costs (maximum):                 $20,000
- Incentive payments:              $15,000
- PAGA payments to LWDA:           $15,000
- Settlement administration costs  $18,000
- Net settlement amount:           $907,000

The gross settlement amount is non-reversionary. (Mot. at 16.) Any checks returned as undeliverable or which remain un-cashed for more than 180 days after the date of mailing will be redistributed within 15 business days of the expiration of the 180-day check cashing period, in accordance with the California Code of Civil Procedure § 384. The net settlement amount will be divided into two separate pools: two thirds of the net settlement amount, approximately $604,970, will be allocated to all class members ("General Net Settlement Amount"). (Id.) The remaining one third of the net settlement amount will be distributed to members of the Driver Subclass, who have additional, separate claims arising from their inability to take meal and rest breaks due to regulations governing the transport of hazardous material ("Driver Net Settlement Amount"). (Id.)

1. **Settlement Class Members**

Each class member who does not submit a timely and valid request for exclusion from the class will be eligible to receive a payment and will not be required to submit a claim form. (Settlement Agreement ¶ 44(e).) To determine each class member's estimated individual settlement payment, the General Net Settlement Amount will be divided by the aggregate total number of qualifying workweeks, resulting in the "Workweek Value." (Id. ¶ 44(c)). Each individual class member's settlement payment will be calculated by multiplying their total number of qualifying workweeks by the workweek value. In addition to the amounts they receive from the General Net Settlement Amount, members of the Driver Subclass will receive payments from the Driver Net Settlement Amount based on the number of qualifying workweeks they worked for Defendant as drivers. (Id. ¶ 44(d).) Plaintiffs estimate that the average payment to Settlement Class members will be $594. (Mot. at 17.)

2. **Class Representative**

The Settlement Agreement provides for a $7,500 incentive award to be paid to Means and Charles. (Settlement Agreement ¶ 14.)

3. **California Labor and Workforce Development Agency ("LWDA") Payment**

      The parties allocated $20,000 as a PAGA award, of which 75% will be paid to the LWDA with the balance remaining in the net settlement amount to be distributed to class members. (Settlement Agreement ¶ 42.)

      **4. Settlement Administration Costs**

      Plaintiffs propose Simpluris, Inc as settlement administrator. The settlement administrator will be paid from the gross settlement amount for the costs of administrating the Settlement Agreement. (Settlement Agreement ¶ 27.) The costs of settlement administration will not exceed $25,000, (id.), and Plaintiffs estimate that the claims administration fee will amount to $18,000, (Mot. at 3).

**C. Injunctive Relief**

      The Settlement Agreement does not appear to include any injunctive relief.

**D. Release**

      All settlement class members who do not request exclusion agree to release the following claims:

> All claims, rights, demands, liabilities, and causes of action of Class Members which accrued during the Class Period and which were or could have been alleged based on the facts alleged in the Complaints, whether known or unknown, contingent or accrued, including but not limited to all claims, rights demands, liabilities, and causes of action known or unknown, contingent or accrued based on any federal, state, or local wage and hour law, including but not limited to: (i) claims for unpaid minimum (Cal. Lab. Code §§ 1194, 1197, 1197.1) and/or overtime wages (Cal. Lab. Code § 510, 1198); (ii) claims for failure to pay contractually-promised wages (Cal. Lab. Code § 218.5); (iii) claims for short, missed, untimely, or otherwise non-compliant meal periods (Cal. Lab. Code § 226.7, 512(a); (iv) claims for short, missed, untimely or otherwise non-compliant rest periods (Cal. Lab. Code § 226.7); (v) claims for failure to timely pay wages upon termination of employment (Cal. Lab. Code §§ 201-203); (vi) claims for failure to furnish accurate itemized wage statements (Cal. Lab. Code § 226(a)); (vii) claims for violations of California Business & Professions Code, Section 17200, et seq.; and (viii) claims pursuant to the PAGA (Cal. Lab. Code §§ 2698 et seq.)

(Settlement Agreement ¶ 23.) Participating class members who endorse and deposit their settlement checks also agree to release from all claims under the Fair Labor Standards Act ("FLSA") that are alleged, related to, or that could reasonably arise under the facts alleged in the Complaints, including, but not limited to, any unpaid wages, minimum wages, overtime, penalties, premiums, bonuses, interest, liquidated damages, attorneys' fees, costs, or any kind of relief available under the FLSA. (Id.)

### E. Notice

The Settlement Agreement proposes the following procedure to notify class members of the Settlement:

Within 15 business days after preliminary approval of this settlement, Airgas will provide a class list to the settlement administrator, which will include each class members full name, last known mailing address and telephone number, social security number, dates of employments in any position encompassed by the Settlement Class or Driver Subclass, the respective number of qualifying workweeks that each class member worked during the class period, the respective number of qualifying workweeks in a driver position by each Driver Subclass member, and each class member's position during the class period. (Settlement Agreement ¶ 4.) Within 15 days of receiving the class list from Airgas, the settlement administrator will mail a notice packet to all class members via regular First Class U.S. Mail, using the most current, known mailing addresses identified in the class list. (Id. ¶ 48.) Any notice packets returned to the settlement administrator as non-deliverable with a forwarding address within 45 days will be sent promptly to the forwarding address affixed thereto. (Id. ¶ 49.) If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address, and/or Social Security number of the class member involved, and will then perform a single remailing. (Id.)

The notice includes the following information: (1) information about the lawsuit; (2) a summary of the principal terms of the Settlement Agreement; (3) the definitions of the Settlement Class and Driver Subclass; (4) the total number of qualifying workweeks the respective class member worked for Airgas during the class period; (5) the class member's estimated individual settlement payment and the formula for calculating individual settlement payments; (6) the dates which comprise the Class Period; (7) instructions on how to submit requests for exclusion and/or notices of objection; (8) the response deadline; and (9) the claims to be released pursuant to the settlement of the action. (Id. ¶ 50.)

To dispute information in their notice packets, Class Members may produce to the settlement administrator evidence showing that the information is inaccurate. Such information must be produced no later than 45 days from the initial mailing or 15 days from the re-mailing of class notice (the "Response Deadline"), whereupon the settlement administrator will decide the dispute. (Id. ¶ 51.)

The settlement notice informs Class Members of procedures to opt-out from or object to the Settlement Agreement. In order to opt-out from the Settlement Agreement, they must sign and fax or postmark a written request for exclusion to the settlement administrator. (Id. ¶ 52.) To object to the Settlement Agreement, the objector must not opt-out and must sent the settlement administrator a notice of objection by the Response Deadline. (Id. ¶ 55.) Objections must include: (1) the objector's full name, date of birth, signature, address, telephone number, and the approximate dates of employment at Airgas in California; (2) a written statement of all grounds for the objection, accompanied by legal support for such objection (if any); (3) copies of

any papers, briefs, or other documents upon which the objection is based; and (4) a statement describing whether the objector intends to appear at the final approval/settlement fairness hearing. (Id. ¶ 18.)

**F. Administration**

Plaintiffs propose that Simpluris serve as the settlement administrator. (Mot. at 20.) Settlement administration duties include preparing, issuing, and mailing any and all notices; receiving and delivering notice of objections to class counsel and counsel for Airgas; computing, processing, reviewing, and mailing individual settlement payment; generating settlement payment checks and related tax reporting forms; preparing tax returns and other required filings; administering the process regarding unclaimed checks; administering disbursements from the Net Settlement Amount; generating checks to class counsel for attorneys' fees and costs, to Plaintiffs for their incentive awards, and to the LWDA for the LWDA payment. (Settlement Agreement ¶¶ 27, 55.)

## V.  PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin., Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, the parties engaged in significant investigation, informal discovery, and class-wide data analysis prior to reaching a settlement agreement. Plaintiffs took the deposition of Defendant's person most knowledgeable with regards to the wage and hour practices at issue; both class representatives were deposed; and Plaintiffs obtained sample class data and statistical information and reviewed payroll records, multiple versions of employee handbooks, and over 30 witness declarations related to key issues in the case. (Buchsbaum Decl. ¶ 27.) The parties also engaged in formal written discovery by exchanging certain key documents. (Id.) Only after this exchange of information and documents did the parties engage in a full-day mediation and arrive at the proposed settlement. (Id. ¶ 37.)

The Court finds the parties have engaged in substantial investigation of the facts and the applicable law. This factor weighs in favor of granting preliminary approval of the Settlement.

### B. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The gross settlement amount is $1,300,000 with an average recovery of approximately $594 per class member. (Mot. at 17.) Plaintiffs estimate that Defendant's maximum liability to be: $922,147 for waiting time penalties; $17 million for rest and meal period violations; $100,000 for overtime underpayment; $1,690,000 for paystub violations; $4.4 million dollars for unpaid wages; and $3,213,600 for Plaintiffs' PAGA claims. (Buchsbaum Decl. ¶¶ 30-36.) Thus, Plaintiffs' maximum potential recovery is $22,925,747. The $1,300,000 amount is approximately 5.7% of the maximum possible recovery. This calculation does not apply any risk adjustment to Plaintiffs' claim to account for Defendant's multiple factual and legal defenses—of which there are many.

Although the settlement amount represents a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.1982)). While the gross settlement amount is only a small fraction of Plaintiffs' total potential recovery, Plaintiffs face significant obstacles in pursuing their claims. Considering these difficulties, the Court finds the settlement amount is potentially fair.

### C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiffs acknowledge the risk, expense, and complexity of further litigation. (Mot. at 11.) Plaintiffs have identified significant risks to each of their claims. Most significantly, the question of whether their meal and rest period claims are preempted by a recent ruling issued by the Federal Motor Carrier Safety Administration ("FMCSA") is one which remains unsettled in this Circuit and warrants a significant discount. Additionally, their meal and rest period claims may be undermined by numerous statements by class members, produced by Defendant, in which the class members claim that they did have the opportunity to take uninterrupted meal and rest periods. (Buchsbaum Decl. ¶ 31.) Plaintiffs also argue that their paystub violation claims would at risk of being undermined if Defendant were able to prove its position that they maintained records that contained identical information to that required in paystubs. Additionally, Plaintiffs acknowledge that, while conditional certification of a settlement class is warranted, there was substantial risk that their proposed classes would not be certified. (Mot. at 12.)

The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. If the settlement is not approved, Defendant will likely oppose class certification and conduct further motion practice to defend against Plaintiffs' claims. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of preliminary approval.

### D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Class counsel has significant experience in wage and hour class actions and represents that the settlement represents a good recovery in light of the substantial risks of litigating Plaintiffs' claims. (Mot. at 12-14.) This weighs in favor of preliminary approval.

### E. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. After Plaintiffs vetted the claims at issue and conducted factual investigations, legal

research, and analysis, the parties engaged in a mediation session with an experienced and respected mediator. (Mot. at 15-16.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., No C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court thus turns to the financial terms of the Settlement Agreement.

Plaintiffs Charles and Means request to each be paid a $7,500 incentive award. (Settlement Agreement ¶ 14.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Thus, the Court finds Plaintiffs' request for an enhancement award potentially reasonable. See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000). While Plaintiffs do not detail the degree of assistance which Means and Charles provided to counsel, both had their deposition taken by opposing counsel. (Buchsbaum Decl. ¶ 27.) This award is potentially fair. For final fairness approval, the Court advises Plaintiffs to provide greater detail of their involvement in the action and an estimate of the time they spent pursuing their claims.

Plaintiffs' counsel seeks $325,000 (or 25%) in attorneys' fees and up to $20,000 in costs. (Mot. at 16.) Generally, courts find that a benchmark of 25% of the common fund is a reasonable fee award. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)) ("In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.").

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington

v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).

Here, while Plaintiffs have not provided a lodestar calculation, the Court nonetheless finds that the requested award is potentially fair, as it corresponds to the Ninth Circuit's 25% benchmark. However, the Court advises Plaintiffs to provide a lodestar calculation and documentation of accrued attorneys' fees in support of their motion for final approval.

### F.  Remaining Factors

In addition to the factors discussed above, the Court may consider the stage of proceedings; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton, 327 F.3d at 959 (internal citations omitted). At the time of settlement, a motion for summary judgment filed by Defendant was pending before this Court, which weighs in favor of preliminary approval. The Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this action. Additionally, the settlement class members have yet to receive notice of the Settlement Agreement and have not had time to comment or object, preventing consideration of their reaction.

Of the factors considered, all weigh in favor of preliminary approval of the Settlement Agreement. Thus, the Court GRANTS preliminary approval of the proposed Settlement Agreement.

## VI.   NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the settlement agreement. Fed. R. Civ. P. 23(e)(1). Notice must be "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989); Churchill Village, LLC v. Gen. Elec., 361 F.3d 566 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'")

The Settlement Agreement provides for direct mail notice to the class member, the contents of which is described above. (Settlement Agreement ¶¶ 4, 50.) Since "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort," Eisen v. Carlisle and Jaquelin, 417 U.S.156, 173 (1974), the Court agrees that direct mail notice is satisfactory. The hearing for Plaintiffs' Motion for Final Approval of the Class Action Settlement will take place on Monday, December 2, 2019 at 9:00 a.m.

## VII. CLASS ACTION FAIRNESS ACT ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

This matter was removed to this Court on the basis of CAFA jurisdiction. (Dkt. No. 1 ¶ 9.) The Motion does not represent that Defendant will cause notice of the proposed settlement to be served under CAFA within ten days of Plaintiff filing this Motion. Thus, the Court cannot find that Defendant has adequately complied with CAFA. This does not preclude the Court from preliminarily approving this Settlement Agreement, but Defendant must make the required notice in order for this Court to grant final approval.

## VIII. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Preliminary Approval. The Court ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2. The following Settlement Class is certified for settlement purposes only: "all individuals who were employed by Airgas in California in its West Division as non-exempt hourly employees at any time between September 20, 2013 and February 1, 2019, inclusive."

3. The Court appoints James Kawahito, Zachary Crosner, and Brent S. Buchsbaum as counsel on behalf of the Settlement Class for the purposes of settlement only.

4. The Court appoints Franklin Means and Andre Charles as the representatives of the Settlement Class for purposes of settlement only.

5. The proposed contents of the Notice of Class Action Settlement are approved.

6. The Court appoints Simpluris, Inc. as the claims administrator.

7. The Court authorizes mailing notice of the settlement to class members by first-class United States mail, pursuant to the Settlement Agreement.

8. On **December 2, 2019 at 9:00 a.m.**, the Court will hold a final fairness hearing to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The hearing will be held in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

**IT IS SO ORDERED.**