ZACHARY CROSNER (SBN 272295)
zach@crosnerlegal.com
MICHAEL CROSNER (SBN 41299)
mike@crosnerlegal.com
**CROSNER LEGAL, PC**
433 N. Camden Blvd., Suite 400
Beverly Hills, California 90210
Telephone: (310) 496-5818
Facsimile: (310) 510-6429

James K. Kawahito
**KAWAHITO LAW GROUP APC**
222 N. Sepulveda Boulevard, Ste. 2222
El Segundo, California 90245
Telephone: 310-746-5300
Facsimile: 310-593-2520

Attorneys for Plaintiff FRANKLIN MEANS

Gary R. Carlin
Brent S. Buchsbaum
Laurel N. Haag
Ronald L. Zambrano
**CARLIN AND BUCHSBAUM LLP**
555 East Ocean Boulevard
Suite 818
Long Beach, California 90802
Telephone: 562-432-8933
Facsimile: 562-435-1656

Attorneys for Plaintiff ANDRE CHARLES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN MEANS, on behalf of himself and others similarly situated,<br>Plaintiff,<br>v.<br>AIRGAS USA, LLC, a Delaware limited liability corporation; AIRGAS USA, LLC-WEST DIVISION, a limited liability corporation; and DOES 1 to 100, Inclusive,<br>Defendants.<br><br>ANDRE CHARLES, individually, on behalf of all others similarly situated, and as representatives of other aggrieved employees,<br>Plaintiff, | CASE NO. 5:17−cv−02160 JGB−SHK (Lead Case No.)<br><br>[Consolidated with Case No. 2:18-cv-1937-JGB (SHx)]<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 2, 2019<br>Time: 9:00 a.m.<br>Crtm: 1<br><br>Hon. Jesus G. Bernal |

0

v.
AIRGAS USA, LLC, a Delaware limited liability company; and DOES 1 to 250, Inclusive,

Defendants.

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 2
II.   STATEMENT OF FACTS ............................................................................ 2
III.  SETTLEMENT TERMS ............................................................................... 3
      A.   Proposed Settlement Terms. ............................................................... 3
      B.   Class Certification .............................................................................. 3
      C.   Settlement Funds and Distribution ..................................................... 4
      D.   Settlement Administration.................................................................. 5
      E.   Attorneys' Fees And Litigation Expenses .......................................... 5
      F.   Incentive Award For Class Representatives ...................................... 6
      G.   Releases .............................................................................................. 6
      H.   PAGA Penalties .................................................................................. 6
IV.   The Settlement Meets the Requirements for Final Approval ...................... 7
      A.   The Strength of Plaintiff's Case. ........................................................ 8
      B.   The Risk, Expense, Complexity and Likely Duration of Further Litigation ................................. 9
      C.   The Risk of Maintaining Class Action Status Throughout the Trial ............................ 10
      D.   The Amount Offered in Settlement .................................................. 10
      E.   The Stage of the Proceedings and the Extent of Discovery Completed ........................... 11
      F.   The Experience and Views of Counsel. ........................................... 11
      G.   The Reaction of the Class to the Settlement. ................................... 11
      H.   No Collusion Between the Parties or their Counsel. ....................... 12
V.    The Proposed Class Representative Payment Is Reasonable ..................... 12
VI.   PAGA Penalties and Notice to the LWDA ................................................ 13
VII.  The Settlement Administrator's Fees ......................................................... 13
VIII. CONCLUSION ........................................................................................... 13

# TABLE OF AUTHORITIES

## TABLE OF CASES

Class Plaintiffs v. Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992) ..................................................8

Duran v. U.S. Bank Nat. Assn. (2014) 59 Cal.4th 1, 34 (2012) ..................................................10

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)..................................................8

In re: American Bank Note Holographics, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ..............12

In re: GMC Pick-Up Truck Fuel Tank Prods. Litig., 55 F.3d 768, 784 (3d Cir. 1995)................9

Kakani v. Oracle Corp., 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007).........................10

Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)..........................7,8

Mandujano v. Basic Vegetable Prods., Inc., 541 F.2d 832, 837 (9th Cir. 1976).......................12

Nelson v. Avon 5 Prod., Inc. (N.D. Cal. Feb. 24, 2017) 2017 WL 733145, at *7 ...................12

Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982)......................7

Torchia v. W.W. Grainger, Inc. (E.D. Cal. 2014) 304 F.R.D. 256.........................................13

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005) ..............................7

Wershba v. Apple Computers, Inc., 91 Cal.App.4th 224, 246, 250 (2001)..................................8

White v. Experian Information Solutions, Inc., 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011).................8,10

**TABLE OF STATUTES**

Fed.R.Civ.P. 23(e) ...........................................................................................................7

Fed.R.Civ.Proc. 30(b)(6) ...............................................................................................11

**TABLE OF OTHER AUTHORITIES**

Managing Class Action Litigation: A Pocket Guide for Judges, at 20 (3d ed. 2010) .................................11

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 2, 2019, at 9:00 a.m., in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California, the Hon. Jesus G. Bernal presiding, plaintiffs Franklin Means and Andre Charles will move move the Court for and order granting final approval of a proposed class action settlement of the above-captioned action, approving the payment of civil penalties to the State of California, for an enhancement award of $7,500 each to named plaintiffs Franklin Means and Andre Charles, and approving payment of the Settlement Administrator's fees and costs. By way of a separately noticed motion, Plaintiffs seek an award of "benchmark" attorney's fees equal to 25% of the gross settlement amount, plus actual litigation costs of $12,393.75.

This motion is made under Fed.R.Civ.P. 23(e) on the grounds that the settlement is fair, reasonable and adequate and in the best interests of the class, and meets all requirements for class certification. The request for the class representative service payments is fair and reasonable under the circumstances of the case.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Joint Stipulation of Class and Representative Action Settlement (Docket No. 40), the Declarations of Zachary Crosner, James Kawahito, Brett Buchsbaum, Franklin Means, Andre Charles, and Norman Alcantara, the entire Court file in this matter, and on such further evidence and argument as may be presented at the hearing.

Dated: November 4, 2019  CROSNER LEGAL, P.C.

_____
ZACHARY M. CROSNER
Attorneys for Plaintiff Franklin Means

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs and Class Representatives Franklin Means and Andre Charles seek final approval of a non-reversionary class action settlement resolving wage and hour claims on behalf of approximately 1,666 individuals who worked for Defendant Airgas USA, LLC and Airgas USA, LLC-West Division (collectively, "Airgas" or "Defendants"), as non-exempt employees in California from September 20, 2013 to February 1, 2019. The proposed $1,300,000 settlement provides approximately $907,000 in cash payments to the Class Members, with the remaining balance of approximately $393,000 covering modest and well-earned service awards to Plaintiffs, settlement administration costs, civil penalties to the State of California, and an award of "benchmark" attorney's fees and litigation costs. The parties and their counsel finalized the settlement after extensive and difficult arms-length negotiations overseen by an experienced and highly-regarded mediator. The Court preliminarily approved the settlement on July 1, 2019.

Since then, the Court-approved notice form was mailed to the class members, who reacted very favorably to the settlement. Not one class member objected to the settlement, and 15 class members – less than 1% – requested exclusion. Accordingly, on behalf of themselves and the Class, Plaintiffs respectfully request the Court grant this motion, give its full and final approval to the settlement, and enter judgment accordingly.

## II. STATEMENT OF FACTS

Plaintiffs outlined the details of the procedural and factual background of this matter in their Motion for Preliminary Approval of Class Action Settlement (filed May 16, 2019; Docket No. 41). To re-familiarize the Court with this litigation, Plaintiff Means filed a Class Action Complaint in September 2017 asserting various wage and hour claims against Defendants on behalf of individuals who worked for Defendants as non-exempt employees in California September 20, 2013 onward. Plaintiff Charles

subsequently filed a second class action lawsuit against Defendants in January 2018, asserting largely identical claims on behalf of the same putative class. The two cases were then consolidated before the Court. [Declaration of Zachary M. Crosner ("Crosner Decl."), ¶¶ 2-3.]

After in-depth formal and informal discovery, the parties participated in an adversarial full-day mediation in February 2019. After extensive negotiations and discussions regarding the claims and defenses in this action, as well as the risks involved in further litigation, both parties accepted a mediator's proposal. [Crosner Decl., ¶¶ 4-5.] The material terms of the proposed settlemlent are encompassed within the Joint Stipulation of Class and Representative Action Settlement ("Joint Stipulation") filed on or about May 14, 2019 (Docket No. 40).

This Court issued its Order granting preliminarily approval to the settlement on July 1, 2019. [Docket No. 42.] Class Notices were mailed to class members on August 7, 2019, with a 45-day window for class members to opt out or object to the proposed settlement. [Declaration of Norman Alcantara ("Alcantara Decl."), ¶ 8.]

### III. SETTLEMENT TERMS

#### A. Proposed Settlement Terms.

In total, Defendants will fund a settlement in the amount of $1,300,000 (the "Gross Settlement Amount"). The Gross Settlement Amount is inclusive of all payments contemplated under the Settlement and accounts for: (1) all Individual Settlement Amounts; (2) the Plaintiffs' Enhancement Payments not to exceed $7,500 each; (3) civil penalties to the California Labor Workforce and Development Agency of $15,000 in satisfaction of PAGA; (4) settlement administration costs not to exceed $18,000; (5) reimbursement of litigation costs not to exceed $15,000; and (6) an award of "benchmark" attorney's fees not to exceed $325,000 (25% of the Gross Settlement Amount). No money will revert to Defendants. [Crosner Decl., ¶ 6.]

#### B. Class Certification

Through its July 1, 2019 preliminary approval order, the Court granted

conditional certification of a settlement class defined as "all individuals who were employed by Airgas in California in its West Division as non-exempt hourly employees at any time between September 20, 2013 and February 1, 2019, inclusive," and including the Driver Subclass consisting of all individuals who worked as a Driver. The Settlement Administrator ultimately mailed class notices to 1,666 individuals identified as members of the class, as defined, including 501 individuals who worked as Drivers. [Alcantara Decl., ¶ 8.] Nothing has changed to require reconsideration of the findings supporting the Court's certification of the Settlement Class or the Driver Subclass. [Crosner Decl., ¶ 7.]

### C. Settlement Funds and Distribution

At least $907,000 from the Gross Settlement Amount will be distributed to the Class Members. This is a cash settlement that did not require Class Members to submit a claim form to receive their settlement share, and Class Members will receive their settlement checks automatically via First Class U.S. Mail. [Crosner Decl., ¶ 8.] Fifteen individuals opted out of the settlement. [Alcantara Decl., ¶ 10.]

Each Class Member who does not opt-out will be entitled to a pro rata share of the Net Settlement Amount based upon his or her total weeks worked during the Class Period, with the Driver Subclass members entitled to a higher per week amount based on their stronger overall claims. As addressed on preliminary approval, the Parties believe a pro rata distribution based on the number of weeks worked by each class member during the class period will fairly allocate the settlement proceeds in light of the legal theories asserted and the evidence adduced prior to mediation. These methods are intended to ensure each Class Member receives a portion of the available settlement funds corresponding to the relative value of his or her potential claims. The proposed allocation provides the most reasonable way to compensate Class Members based on the amount of time they worked for Airgas and the number of instances they were not compensated properly and the number of missed meal and rest periods, coupled with the additional theories of liability available to the Driver Subclass. [Crosner Decl., ¶ 9.] Awards will

average $549 across the class, and will average $610 for the Drivers. The largest award will be about $1,905. [Alcantara Decl., ¶ 13.]

The overall settlement amount is reasonable in light of the considerable risks associated with Plaintiffs' claims, and the delay and risk posed by continuing to litigate such hotly disputed allegations in the face of significant legal and factual defenses. In Plaintiffs' counsel's judgment, the value of the settlement to the class is substantial and within the range of reasonableness.

### D.     Settlement Administration

The Settlement Administrator carried out the notice plan contemplated by the settlement and as ordered by the Court, including running each address through the National Change of Address database and "skip-tracing" any class notices returned as undeliverable. [Alcantara Decl., ¶¶ 5-10.] The Class Notice, previously approved by the Court, duly informed Class Members of the settlement terms, including the estimated relief each Class Member will receive, the amounts to be requested for attorney's fees and the class representative enhancement awards, and the right to opt out of or object to the settlement. [Alcantara Decl., Exh. A.] The Settlement Administrator mailed 1,666 Class Notices on August 7, 2019. Only 5 notices ultimately were deemed undeliverable, meaning 1,661 Class Members, approximately 99.7% of the class, received their respective notices. [Alcantara Decl., ¶ 9.] The 45-day response window for opting out or objecting to the settlement expired on September 21, 2019. [Alcantara Decl., ¶ 8.] As of the filing of this motion, no objections and only 15 requests for exclusion have been received by Simpluris. [Alcantara Decl., ¶¶ 14-15.] There are no outstanding disputes regarding the information used to calculate class member settlement shares. [Alcantara Decl., ¶ 16.]

### E.     Attorneys' Fees And Litigation Expenses

Airgas agreed not to oppose an application for an award of attorney's fees up to one-quarter of the gross settlement fund, or $325,000, as well as litigation costs and expenses up to $15,000.00. Plaintiffs' counsel filed a separate motion for attorney's

5

fees and costs, set to be heard concurrently with this motion, attesting to the nature and scope of the work performed as well the costs and expenses incurred. [Crosner Decl., ¶ 10.] Importantly, not one class member objected to the proposed award of fees and costs. [Alcantara Decl., ¶ 15.]

### F. Incentive Award For Class Representatives

Plaintiffs also seek final approval of a class representative enhancement payment of $7,500 each, in addition to their pro rata share of the settlement proceeds. The proposed services award reflects Plaintiffs' efforts to protect the class interests, the successful results achieved, the time they expended in the litigation, and the financial and professional risks they undertook over some two years of litigation. As detailed in their declarations submitted concurrently herewith, Plaintiffs were actively involved in the case, including meeting and conferring with counsel, assisting in counsel's investigation, providing relevant documents and emails, reviewing documents, and taking on the risks associated with filing a lawsuit against an employer for the benefit of the Class. Each Plaintiff also endured a full-day deposition. [Crosner Decl., ¶ 11.]

### G. Releases

Upon final approval, Class Members will release Defendants Airgas USA LLC, Airgas USA LLC-West Division, and other Released Parties (as defined in the Joint Stipulation) from all claims set forth in the operative complaint, or that could have been pleaded based on the factual allegations underlying the operative complaint, including PAGA claims, from September 20, 2013 to February 1, 2019. No one other than Class Representatives Franklin Means and Andre Charles is waiving his or her rights under California Civil Code Section 1542. [Crosner Decl., ¶ 12.]

### H. PAGA Penalties

Finally, the settlement provides for $20,000 to be allocated to civil penalties under PAGA and Plaintiffs request the Court approve that amount. Consistent with PAGA, $15,000.00 of this sum will be paid to the Labor and Workforce Development

Agency as the State's share of the civil penalties, with the remainder included in the Net Settlement Amount for distribution to the Class Members. [Crosner Decl., ¶ 13.]

**IV.       The Settlement Meets the Requirements for Final Approval**

In class action cases, the district court must approve any settlement. Fed.R.Civ.P. 23(e). The Court already conducted an inquiry into the settlement's fairness and adequacy in the preliminary approval motion and now the notice process has been completed and Plaintiffs respectfully request the Court revisit and confirm the settlement's overall fairness with the benefit of the class member reaction.

The "universal standard" in evaluating the fairness of a settlement under Fed.R.Civ.P. 23(e) is whether the settlement is "fundamentally fair, adequate and reasonable." Fed.R.Civ.P. 23(e)(2); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id.

As the Ninth Circuit has aptly recognized, "the very essence of a settlement is compromise." Id. at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998). Even if a proposed settlement amounts to a fraction of the potential recovery, this does not mean the settlement is necessarily inadequate. Id. at 1242.

A proposed settlement is presumed to be fair when (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005). Here, all of the factors giving rise to a presumption of

7

fairness exist. First, the proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by a well-respected, independent mediator. [Crosner Decl., ¶ 5.] Second, the class is represented by experienced counsel.[1] Third, the parties exchanged a significant amount of information, both formally and informally, such that plaintiffs and their counsel are able to make an informed recommendation about the settlement. [Crosner Decl., ¶¶ 2-4.] Thus, the settlement is presumed to be fair.

In evaluating the fairness of a settlement, the district court may also consider the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, the district court should satisfy itself that the settlement is not the product of collusion between the plaintiff and the defendant. Class Plaintiffs v. Seattle, 955 F.2d. 1268, 1290 (9th Cir. 1992). Here, except for the absence of a governmental participant, each factor weighs in favor of approving the settlement.

### A.     The Strength of Plaintiff's Case.

A settlement is not judged against what might plaintiff recover had he prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. Linney, 151 F.3d at 1242; White v. Experian Information Solutions, Inc., 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); see also Wershba v. Apple Computers, Inc., 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits

---

[1] Class Counsel's respective qualifications and experience were addressed the Motion for Preliminary approval and related Declarations of Brent Buchsbaum [Docket No. 41-1], James Kawahito [Docket No.

were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation").

Plaintiffs addressed the strengths and weaknesses of the class claims and Defendants' defenses in detail in the motion for preliminary approval, and respectfully submit there has been no change in the law or facts of this case rendering the class claims any stronger than they were at preliminary approval. [Plaintiffs' Motion for Preliminary Approval, at 5-10; Docket No. 41.] Although Plaintiffs believe they could have prevailed, there were no guarantees as Defendants presented substantial evidence and legal defenses challenging the merits of Plaintiffs' claims, as well as challenging class certification. When the risks of prevailing at both certification and trial are factored into the equation, the settlement value is reasonable and supported.

In sum, when the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, it is clear that the settlement amount of $1,300,000 is within the "ballpark" of reasonableness.

**B.     The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Further litigation of this matter would not necesarily serve the intests of the class members, and would require class members to offer indiudalized evidence regarding their damages; importantly ,the costs associated with such efforts would be substantial <u>In re: GMC Pick-Up Truck Fuel Tank Prods. Litig.</u>, 55 F.3d 768, 784 (3d Cir. 1995) ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). By the same token, further litigation would cause significant delay of any eventual payments to the class members, assuming they even prevail. Lastly, the complete absence of objections and nominal number of opt outs strongly suggests the class itself believes the benefits of the instant settlement far outweigh the prospects of continued litigation.

41-2], and Zachary Crosner [Docket No. 41-2]. 41-3

### C. The Risk of Maintaining Class Action Status Throughout the Trial.

Plaintiffs and their counsel strongly believe this lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. In all class actions, the specter of decertification always looms present. Cases like Duran v. U.S. Bank, 59 Cal.4th 1, 34 (2012) demonstrate the complexity of using statistical samples to litigate representative class claims creates a very real risk of decertification regardless of class size. Based thereon, even Plaintiff's preferred method of evidentiary proof comes with the potential risk of losing certification in the process. Plaintiff acknowledges Defendants' arguments do present some risk. Consequently, this factor suggests that settlement is preferable to continued litigation. [Crosner Decl., ¶ 15-18.]

### D. The Amount Offered in Settlement

Defendants agreed to settle the immediate class action for a Gross Settlement Amount of $1,300,000 and, following deduction of attorney's fees and costs, the enhancement payment, the PAGA penalty payment, and settlement administration costs, this results in a Net Settlement Amount of at least $907,000. As discussed above, these monies will then be proportionately distributed to Settlement Class Members according to number of weeks worked during the class period, and will result in an average share of approximately $549 for non-drivers and $610 for the Driver Subclass.

It is also significant that none of the settlement funds revert back to Airgas, and provide immediate benefit to a class of workers without a lengthy claims process. White, 803 F.Supp.2d at 1086; Kakani v. Oracle Corp., 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007); c.f., Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 20 (3d ed. 2010), available at http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf (reversionary provisions and/or cumbersome claims process may indicate lack of fairness).

Based on this, the size of the overall recovery well as the significant individual settlement awards supports a finding the proposed settlement is truly fair, adequate, and reasonable. Accordingly, this factor weighs in favor of approval as well. [Crosner Decl.,

¶¶ 15-19.]

E.     The Stage of the Proceedings and the Extent of Discovery Completed

Prior to reaching this settlement, Plaintiffs' counsel conducted substantial formal and informal discovery and investigation into the claims alleged by Plaintiffs, including, among other things, reviewing and analyzing handbooks and other policy documents, reviewing and analyzing time and payroll data produced by Defendants, reviewing class member declarations, and deposing Defendants' "person most knowledgeable" under Fed.R.Civ.Proc. 30(b)(6). Additionally, both Plaintiffs sat for a full-day deposition. Plaintiffs' counsel's calculations are based on reliable data on class size (total current and former employees), pay period data, average hourly rate of pay, time records, pay records, and policy documents. In addition, Plaintiffs' counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the litigation. [Crosner Decl., ¶¶ 4, 15.] Thus, Plaintiffs and their counsel were able to act intelligently and effectively in negotiating the proposed Settlement. [Crosner Decl., at ¶ 15.] Plaintiffs' counsel has sufficient familiarity with the facts of the case to make an informed decision about the fairness of the settlement. [Crosner Decl., ¶¶ 4, 15.]

F.     The Experience and Views of Counsel.

Plaintiffs' counsel has extensive experience in wage and hour class actions and is well-qualified to prosecute this action. Based on this combined experience, and after factoring in the risks articulated above, Plaintiffs' counsel are confident the current proposed settlement is fair, adequate, and reasonable, and in the best interests of the class. [Crosner Decl., ¶¶ 17-19.]

G.     The Reaction of the Class to the Settlement.

The settlement was well-received by the class. No objections have been filed, and only 15 individuals out of 1,666 class members – less than 1% -- requested exclusion from the settlement. [Alcantara Decl., ¶¶ 14-15.] As the Ninth Circuit and other federal courts recognize, the class members' reaction to the settlement is one of the most important factors to consider in determining if final approval should be granted.

Mandujano v. Basic Vegetable Prods., Inc., 541 F.2d 832, 837 (9th Cir. 1976); see also In re: American Bank Note Holographics, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks omitted).

### H. No Collusion Between the Parties or their Counsel.

As discussed above, the settlement is the product of adversarial, non-collusive, and arm's-length bargaining between experienced counsel, facilitated by a well-respected mediator. There are no undisclosed side agreements between the parties or their counsel. [Crosner Decl., ¶ 5.]

### V. The Proposed Class Representative Payment Is Reasonable

Courts award class representative payments to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, and also to compensate class representatives for their time, effort and inconvenience. Factors considered in determining whether to grant such an award may include the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Consistent with the Joint Stipulation, Plaintiffs now request an enhancement of $7,500 each. These modest awards were well-earned based on the risks each plaintiff faced in coming forward as a lead plaintiff, the assistance each provided to counsel throughout the litigation, and for enduring an adversarial deposition. [Crosner Decl., ¶¶ 20-23; Declaration of Franklin Means, at ¶¶ 2-9; Declaration of Andre Charles, at ¶¶ 2-5.] Plaintiffs submit the amounts sought are well within the range of reasonableness for such awards in other wage and hour class actions. Nelson v. Avon 5 Prod., Inc. (N.D. Cal. Feb. 24, 2017) 2017 WL 733145, at *7 (approving incentive award of $10,000 where plaintiff "appeared for an all-day deposition, searched for

documentation relating to the class action, reviewed documents and settlement papers, attended the mediation and subsequent negotiations, and aided Class Counsel with negotiation efforts"); Torchia v. W.W. Grainger, Inc. (E.D. Cal. 2014) 304 F.R.D. 256 (approving $7,500 incentive award).

## VI. PAGA Penalties and Notice to the LWDA

The settlement also provides for $20,000 to be allocated to civil penalties under PAGA and Plaintiffs request the Court approve said amount. This amount is reasonable and in line with settlements in other wage and hour class actions in California. Consistent with PAGA, $15,000 of this amount will be paid to the Labor and Workforce Development Agency as the State's share of the civil penalties, with the remainder included in the Net Settlement Amount for distribution to the Class members. At the time this motion was filed, Plaintiffs' counsel gave notice to the LWDA of the settlement and final approval hearing date. [Crosner Decl., ¶ 24; Exh. 1.]

## VII. The Settlement Administrator's Fees

The settlement provides for a payment to Simpluris of no more than $18,000 for its services as the settlement administrator. As set forth in the Declaration of Norman Alcantara, Simpluris has performed and will continue to perform its required duties through final distribution of the settlement funds, and incurred $18,000.00 in fees and expenses. [Alcantara Decl., ¶ 17.] Accordingly, Plaintiffs respectfully request the Court approve payment of $18,000 to Simpluris from the Gross Settlement Amount. [Cronser Decl., ¶ 25.]

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiffs Franklin Means and Andre Charles respectfully request that the Court grant this motion and grant final approval of the proposed class action settlement, approve the requested class representative enhancement payments, approve the payment of PAGA penalties to the State, approve payment of the Settlement Administrator's fees and expenses, approve the award of attorney's fees and costs requested in Plaintiffs' separate Motion for Award of Attorney's Fees and Costs, and

enter judgment in this action.

Dated: November 4, 2019                    CROSNER LEGAL, P. C.

_____
ZACHARY M. CROSNER
Attorneys for Plaintiff Franklin Means

14